(43 Misc. Rep. 94.)

## McINTYRE v. HARRINGTON.

(Supreme Court, Trial Term, Albany County. March, 1904.)

1. SPECIFIC·PERFORMANCE—PURCHASE OF LAND.

    One who purchased a lot relying on a newspaper advertisement authorized by the owner of the property, which falsely alleged the frontage to be 54 feet greater than it was in fact, and also made a mistake in the depth of more than 100 feet, should not be compelled to perform his contract.

Action by Archibald McIntyre against Frank A. Harrington to compel specific performance of a contract for sale of land. Complaint dismissed.

John De Witt Peltz, for plaintiff.

Harris & Rudd (William P. Rudd, of counsel), for defendant.

COCHRANE, J. One George C. Cook was the equitable owner of the property in question, and the person beneficially interested in the sale thereof, the plaintiff holding only the record title. Some time prior to the contract in question, Mr. E. De L. Palmer, a real estate agent of the city of Albany, acting as the agent of Mr. Cook, inserted a notice in some of the Albany newspapers advertising the said property for sale, which notice, among other things, referred to the property as being 300 feet front and 1,000 feet deep. This notice was published in such newspapers for some time, and fell under the observation of the defendant, who as a result thereof, and after some negotiations with Mr. Palmer, made the contract in question. The property in fact has a frontage of 245.60 feet, and a depth of 877.53 feet on the northerly side and 784.52 feet on the southerly side. Before making the contract in question, the defendant, with his wife, visited the property twice, but made no measurements, and the only knowledge he had at the time of the contract as to the dimensions of the property was the information contained in the advertisement above referred to. He had known the property for a number of years, but there is no claim that he had any information as to the exact dimensions, except that more than 11 years before the contract Mr. Palmer wrote to him concerning the property, stating correctly the number of acres it contained. If we assume, however, that the defendant retained in his mind the contents of this letter during all the intervening years, the statement as to the acreage is qualified by the further statement in said letter that there was about 300 feet frontage. Mr. Cook had owned the property since 1887, and lived there from 1887 to 1892. In 1901 he caused a map to be made, which was introduced in evidence, and which shows the exact dimensions of the property. It is admitted, however, that there were no fraudulent representations made by him, and I shall accept the testimony of Mr. Cook that he was deceived himself as to the dimensions of the property, and that he thought it was about 300 feet front and about 1,000 feet in depth. Intermediate the time when the contract was made, and the time therein fixed for the delivery of the deed, the defendant's son, in making some measurements of the prop-

erty with a view to the erection of some structure, discovered that the dimensions were not what they were supposed to be. He called the defendant's attention to that fact, who, after verifying the measurements as made by his son, refused to take the deed. After the commencement of this action the parties entered into a stipulation whereby the defendant took the title and paid the purchase price agreed on, excepting the sum of $750 thereof, and it was stipulated that the action should proceed as to such unpaid purchase price. The action must be decided, however, as if such stipulation had not been made, except that the decision will only affect the unpaid purchase price of $750.

The plaintiff urges that the answer is insufficient, because it does not allege fraud or mutual mistake. It is true it does not in terms so allege, but that there must have been either fraud or mutual mistake is a necessary inference from the facts set forth in the answer. The answer alleges a mistake on the part of the defendant as to the dimensions of the land, caused by the publication of the erroneous statement which was relied on by him. The plaintiff either knew or did not know that the dimensions as published were incorrect. If he knew it, it constituted fraud. If he did not know it, he was mistaken. As a matter of pleading, it was immaterial which. The defendant does not seek to reform the contract, and hence does not allege the facts with as much minuteness or detail as might be necessary if he was pleading a counterclaim with a view to affirmative relief. His attitude is that of resistance to the enforcement of the contract by the plaintiff. The answer is sufficient for that purpose.

Mr. Cook furnished the information which constituted the basis of the newspaper advertisement. He says he told a clerk in Mr. Palmer's office that the property was about 300 feet front and about 1,000 feet in depth, and he subsequently read the newspaper notice. The case differs, therefore, from Emerson v. Roof, 13 Abb. N. C. 358, where a diagram specifying the supposed dimensions of the property exhibited by the agent to the purchaser was unauthorized by the seller. It more nearly resembles in this respect the case of Phillips v. Higgins, 7 Lans. 314, affirmed 55 N. Y. 663. The representations made by Mr. Palmer through the medium of the newspapers must be considered in the same light as if made by the owner, Mr. Cook.

The plaintiff says that the advertisement did not contain sufficient information to be misleading; that, although the premises were stated to be 300 feet front and 1,000 feet deep, as no mention was made of the width in the rear, the property might have been triangular in shape, and have extended to a point in the rear. The published statement, however, must be taken in connection with the facts admittedly known to both parties. The parties knew that the property was practically rectangular in shape, and the statement to the effect that it was 300 feet front and 1,000 feet deep, taken in connection with their knowledge of the shape and location of the property, would mean nothing else than that the property was 300 feet wide from front to rear, a distance of 1,000 feet. Very clearly a mistake of fact existed at the time the contract in question was made, which mistake was mutual and common to both parties. There is no claim that the

defendant had any knowledge of the actual dimensions except what he read in the published advertisement. Mr. Cook, the actual owner, testifies that he was deceived as to the actual dimensions, and that he thought the property had a frontage of about 300 feet. If he was thus deceived as to the actual dimensions, after having owned the property for 16 years and resided thereon for 5 years, it is not strange that the defendant was likewise deceived, notwithstanding the general information he may have had concerning the property, and the two visits he made thereto shortly prior to the contract for the purpose of observing and examining the property with a view to purchasing the same. True, the defendant might have measured the property, and thereby avoided this litigation. But the grantor cannot complain because the defendant took him at his word, and relied on his representations. The mistake was material, and essentially affected the subject-matter of the contract. It is true that Mr. Cook says the dimensions as he gave them to Mr. Palmer were approximate, being about 300 feet in width and about 1,000 feet in depth. But the difficulty with the plaintiff's case is that there was not a trifling or unimportant diminution in the quantity of land. The property did not approximate to the dimensions which the parties believed it possessed. There is a failure of about one-third in the quantity of land, and a shortage of 54.40 feet in width practically from front to rear. This constitutes a very material difference between what was agreed to be sold and what actually exists.

The plaintiff further contends that the dimensions did not occupy a prominent place in defendant's mind; that what he wanted was the property for the purposes of a residence; and that he did not contract with reference to the exact quantity of land connected therewith. The property is a suburban residence property, intended and adapted for residential purposes, laid out with lawns, gardens, walks and driveways, and has on it, besides the residence, the buildings usually found on a place of this kind. Very likely the greatest part of the value is in the residence. But it is a matter of common knowledge that the value of suburban residential property such as this is to a certain extent affected by the quantity of land connected therewith, and that such a residence is more valuable if surrounded by spacious grounds than otherwise. It cannot be said that the value of the property is not affected by the quantity of land connected therewith. That the land was considered by the plaintiff an important element in connection with this property is apparent from the fact that he stated the dimensions thereof in the notice published in the newspapers, the purpose of which, of course, was to attract purchasers.

All prior negotiations were merged in the contract. This does not mean, however, that a court of equity cannot relieve a party against a mistake which was mutual and common to both parties to the contract. The court may not vary or change the terms of a contract, but it may, and should in a proper case, grant relief from a contract which neither party intended to make. Here the plaintiff agreed to sell and the defendant to purchase a tract of land 300 feet in front by 1,000 feet in depth. The subject-matter of the contract did not exist to the extent as understood and within the intention of the par-

ties.   Nor does it make any difference that the description of the property as contained in the contract gives no dimensions.   A court of equity is not thus limited in its power.   The contract was executory, and was made under a mutual misapprehension as to a material fact.   Before the contract was performed, the mistake was discovered. This mutual mistake was occasioned by the representations of the plaintiff, which, though not fraudulent, were untrue.   It would be inequitable under such circumstances to compel the defendant to, perform the contract.   Complaint dismissed, with costs, and an additional allowance of $37.50.

Complaint dismissed, with costs and additional allowance.